IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA MILLER, )<br>)<br>Claimant, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Respondent. ) | No. 15-cv-1415<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Claimant Brenda Miller ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.] The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 17, 24.] For the following reasons, Claimant's motion is granted and the Commissioner's motion is denied. This matter is remanded to the Social Security Administration ("the SSA") for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

On September 1, 2011, Claimant filed her DIB and SSI applications, alleging a disability onset date of May 1, 2011, due to arthritis, fibromyalgia ("FMS"), osteoarthritis, cysts, anxiety, ulcers, short attention span, and memory issues. (R. 137-50, 176, 179-87.) After an initial denial

on November 21, 2011, and a denial on reconsideration on May 17, 2012, Claimant filed a request for an administrative hearing before an Administrative Law Judge ("the ALJ") on July 13, 2012. (R. 66-69, 92-93.) Claimant, represented by counsel, appeared and testified at the hearing, which took place on May 31, 2013. (R. 31-65.) A Vocational Expert ("the VE") also testified at the hearing. *Id.*

On August 23, 2013, the ALJ issued a written decision denying Claimant's applications and finding that she was not disabled under the Act. (R. 11-25.) As an initial matter, the ALJ found that Claimant met the insured status requirement of the Act through June 30, 2013. (R. 13.) At step one, the ALJ determined that Claimant had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date of May 1, 2011. *Id.* At step two, the ALJ found that Claimant had the severe impairments of FMS, affective disorder, and anxiety disorder. (R. 14.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.)

Before step four, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform light work, except that she can occasionally lift and carry 20 pounds and frequently 10 pounds, can sit, stand, and walk for six hours during an eight-hour workday with normal or customary breaks, can occasionally push and pull 20 pounds and frequently 10 pounds, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can understand and remember detailed three to four step instructions but not complex instructions, has the attention and concentration to carry out a variety of detailed instructions with adequate persistence and pace, can frequently interact with coworkers, supervisors, and the general public, and can adapt to typical changes in the workplace. (R. 21.) In so finding, the ALJ determined that Claimant's

statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 22.) The ALJ also afforded significant weight to the medical opinions of both medical consultants, Dr. Michael Cremerius and Dr. Richard Bilinsky. (R. 23-24.) At step four, the ALJ determined that Claimant is unable to perform any past relevant work. (R. 24.)

At the final step, the ALJ considered Claimant's age, education, work experience, and RFC, and concluded that she could perform jobs existing in significant numbers in the national economy, such as rental clerk, sales attendant, and housekeeper. (R. 25.) On December 15, 2014, the Appeals Council denied Claimant's request for review. (R. 1-3.) That denial made the ALJ's opinion the final decision of the Commissioner. *Id.*; *see also Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council ("AC") denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's

3

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Social Security Commissioner as to any fact if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

In challenging the ALJ's determination, Claimant proffers three arguments. First, Claimant argues that the ALJ erred in rendering her credibility determination. Next, Claimant contends that the ALJ improperly assessed her RFC. Finally, Claimant argues that the ALJ ignored favorable VE testimony. The Court finds that the ALJ committed the first error. Because this error requires remand and will necessitate that the ALJ reconsider the RFC determination and possibly obtain new testimony from the VE, the Court will not address Claimant's second and third arguments.

**A.  Credibility Determination**

Since the ALJ issued his decision in this case, the SSA issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p to "clarify that subjective symptom evaluation is

not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1; *see also Cole v. Colvin*, --- F.3d ---, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."). Because SSR 16-3p is simply a clarification of the Administration's interpretation of existing law, rather than a change to it, this new ruling applies to Claimant's argument in this case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016).

As before, under SSR 16-3p, an ALJ must carefully consider the entire record and evaluate the "intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An ALJ need not mention every piece of evidence in her opinion. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). But an ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts by ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010). Moreover, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). Where an ALJ's credibility finding is patently wrong, meaning it lacks explanation or support, the Court will reverse the ALJ's decision. *Elder*, 529 F.3d 408 at 413-14.

In this case, the ALJ mostly relied on Claimant's lack of mental health treatment to discount her subjective statements about the extent of her mental limitations. (R. 22.) In particular, the ALJ repeatedly emphasized that Claimant was never hospitalized and, instead,

received only out-patient treatment for her mental conditions. This was an improper basis for the ALJ's decision.

Claimant received consistent, significant mental health treatment. In August, 2011, Claimant underwent a clinical assessment at the Lake County Health Department. (R. 297-313). Later that same month, she underwent another clinical assessment, this time with Dr. Beth Fraum, a psychiatrist. (R. 313-18). Both of these assessments recommended not that Claimant be hospitalized, but, rather, that she receive psychiatric evaluations, mental health assessments, and therapy, and take psychotropic medications. (R. 310-11, 318.) After these assessments, Claimant returned for therapy sessions with Dr. Fraum on October 19, 2011, November 2, 2011, November 16, 2011, December 13, 2011, January 10, 2012, March 20, 2012, and May, 15, 2012. (R. 423-28, 448.) Then, in September, 2012, Claimant received another clinical assessment, which made largely the same treatment recommendations as those made before. (R. 460-74.) Claimant then saw Dr. Nasir Syed, another psychiatrist, several times between September, 2012, and March, 2013. (R. 443-47.)

All of these doctors reported that Claimant had at least some significant mental health problems. They noted that she attempted suicide multiple times and that she experienced visual and auditory hallucinations. (R. 316-17, 424, 425, 445, 446, 447, 448, 461, 471.) They noted that she has a history of physical abuse and neglect, sexual assault, trauma, emotional abuse, and financial exploitation. (R. 305, 309, 312, 468.) Over the course of her treatment, they noted a variety of depressive, manic, psychosis, and anxiety issues. (R. 297-98, 423, 426, 428, 444, 449, 460-61.) They diagnosed her with depressive, panic, and mood disorders. (R. 309, 318, 472.) They assigned her low GAF scores (more on that in a moment). And they prescribed a whole host of psychotropic medications, including Lexapro, Trazodone, Clonazepam, and

6

Hydroxyzine. Yet, these medical professionals did not think it necessary to deal with these problems through hospitalization or in-patient treatment.

An ALJ cannot play doctor and speculate about what aggressive treatments a claimant should have but did not obtain. Not every disabling mental impairment requires hospitalization or in-patient treatment. *See Baird v. Astrue*, 2011 WL 529045, at *18 (N.D. Ill. Feb. 3, 2011). Whether "the type of a medical treatment [a claimant] received . . . [is] adequate for a finding of a disabling [mental impairment], [is] a matter for medical judgment." *Id.* Indeed, an ALJ is "not competent" to conjecture that a claimant "would need to be institutionalized and/or have frequent inpatient treatment" if he had certain psychological impairments. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Yet, in this case, the ALJ did exactly that. He speculated that Claimant should have received more aggressive mental treatment even though she was already receiving extensive treatment consistent with the recommendations of her doctors. Essentially, the ALJ played doctor and cherry-picked the evidence that supported his own medical judgment. *See Ashe v. Colvin*, 2016 WL 1056054, at *5 (N.D. Ind. Mar. 17, 2016) ("Apparently the ALJ made some sort of determination about how many therapy sessions would be considered adequate, a determination that looks suspiciously like he was impermissibly 'playing doctor,' and then found that because Plaintiff failed to seek that level of treatment, her allegations of depression, anxiety, and OCD are not credible, without asking Plaintiff why she did not attend more therapy sessions.") (internal citation omitted).

Further, the ALJ entirely failed to address whether Claimant even could have obtained additional treatment. Claimant testified that she did not have insurance. (R. 50.) According to Claimant, without insurance, she was limited to her regular visits with her psychiatrists and could not obtain other psychiatric treatment. *Id.* Even Claimant's doctors noted that she had financial

7

problems and trouble securing adequate medical care. *See, e.g.,* R. 309, 314, 328, 344, 428, 471-72. If Claimant's testimony were true, then she would have a "good reason" for her supposedly conservative treatment. *See Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012). That would preclude the type of adverse credibility finding that the ALJ made in this case. *Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008).

The ALJ also did not properly address whether Claimant's testimony was consistent with her GAF scores. The ALJ emphasized that Claimant was assigned a GAF score of 52 at her initial assessment in early August, 2011. (R. 23, 310.) And he explicitly indicated that this was more probative than another GAF score of 48 because the treating psychiatrist who assessed the score of 48 made treatment recommendations that were too conservative. Of course, this attempt at playing doctor was inappropriate. More fundamentally, though, the GAF score of 52 did not necessarily rebut Claimant's testimony. That score indicates that Claimant had moderate symptoms. *See Farrell v. Astrue,* 692 F.3d 767, 769 (7th Cir. 2012). In fact, this score falls at the low end of the range for moderate symptoms, which is 50-60. *Id.* Further, and more importantly, it is the highest GAF score in the record. Claimant received two other GAF scores, one of 50 (R. 473), and one of 48 (R. 318). These both indicate serious symptoms. *Id.* They "do[] not represent functioning within normal limits" and do not "support a conclusion that [Claimant] [is] mentally capable of sustaining work." *Campbell v. Astrue,* 627 F.3d 299, 307 (7th Cir. 2010).

These flaws in the ALJ's credibility analysis with respect to Claimant's mental condition are particularly concerning because he failed to identify significant objective medical evidence that rebutted Claimant's testimony. In fact, the ALJ never discussed to any meaningful extent the various findings contained in the treatment notes of Claimant's psychiatrists, nor addressed

8

whether these findings were consistent with Claimant's testimony. Instead, the ALJ relied on the opinion of one medical consultant. And two of the three reasons that the ALJ gave for relying on that opinion are not sound. The ALJ gave the opinion significant weight because it was supported by Claimant's supposedly conservative treatment. That is a faulty rationale for the reasons discussed above. The ALJ also said that the opinion was consistent with a GAF score of 52. In doing so, the ALJ again seemed to ignore the GAF scores of 48 and 50. More fundamentally, it is far from clear that the opinion was consistent with the GAF scores indicating moderate and serious mental impairments. The reviewing doctor opined that Claimant was moderately limited in just four areas, and had no significant limitations in sixteen areas. (R. 382-83.) He did not find any marked limitations. *Id.* At a minimum, the ALJ failed to sufficiently explain how this opinion was consistent with the GAF scores.

For all of these reasons, the ALJ's bases for discounting Claimant's testimony about her mental condition do not justify his conclusion. Therefore, he failed to build the required logical bridge.

There is one final error with the ALJ's credibility analysis that bears mentioning. The ALJ discredited Claimant's testimony regarding her pain because, according to him, there was evidence that Claimant exaggerated the severity of her symptoms when talking to her doctors in order to get narcotic medication. (R. 23.) The ALJ cited one treatment note to support this determination. *Id.* That note reveals that Claimant asked for Vicodin. (R. 434.) A physician assistant explained to Claimant that chronic opioids were not appropriate for her condition, as she had been told in the past. *Id.* The treatment note reveals, though, that Claimant had tried a long list of medications and treatments that all failed to manage her pain. *Id.* It also states that Claimant wanted Vicodin because "she has done well with this in the past for pain management."

*Id.* In light of these facts, it is not surprising that Claimant asked for Vicodin or that she would do so repeatedly, even if her doctors told her it was not the best course of treatment. The ALJ failed to identify counterbalancing evidence in the record from which one could reasonably conclude that Claimant was lying to her doctors to get drugs that were unnecessary to help with her pain.

To be clear, the Court is not finding that, on remand, the ALJ must credit Claimant's testimony and award benefits. Rather, the ALJ should evaluate the entire record, including Claimant's testimony, and thoroughly explain the rationale that underlies whatever decision he ultimately makes.

### IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 17] is granted, and the Commissioner's motion for summary judgment [ECF No. 24] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 12, 2016